J-S77031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.D.-T. | : | No. 1178 MDA 2017 |

Appeal from the Order Entered June 28, 2017
in the Court of Common Pleas of York County Civil Division at No(s):
2015-FC-001816-03

BEFORE: BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.: **FILED JANUARY 22, 2018**

Appellant, K.H. ("Father"), files this appeal from the Order entered in the Court of Common Pleas of York County on June 28, 2017, awarding, in relevant part, shared legal custody of the parties' minor son, A.D. ("Child"), and primary physical custody to J.D.T. ("Mother") with partial physical custody to Father. After review, we affirm the trial court's Order.

Child was born to Mother and Father in September of 2013. Complaint for Custody, 9/25/15, at ¶3. Mother and Father were never married, and they were no longer together as a couple at the time of Child's birth. Notes of Testimony ("N.T."), 2/13/17, at 14. After Mother filed for child support and paternity had been established, Father filed a complaint for custody in

_____
* Former Justice specially assigned to the Superior Court.

September of 2015 seeking shared legal and physical custody of Child.[1] *Id.*
at 15-16, 89; Complaint for Custody, 9/25/15 ¶ 9. Subsequent to a stipulated
order dated November 5, 2015,[2] the trial court entered an interim order on
May 4, 2016, pending a custody trial, providing for shared legal custody of
Child and primary physical custody to Mother with partial physical custody to
Father on alternate weekends and every Wednesday evening.

A custody trial ultimately was held on February 13, 2017[3] and June 15,
2017.[4] Both Mother and Father were represented by counsel and testified on
their own behalf. The trial court additionally heard from CYF caseworker, Leisa
Harmis; Father's girlfriend, L.A.; Mother's stepdaughter, J.T.; Mother's
husband, E.T.; and a former employee of Child's daycare, A.M.

---

[1] As reflected by the docket and the certified record, subsequent petitions for contempt and modification were filed by both parties. We observe that, at the time of the custody trial, pursuant to an amended petition to modify, Father was seeking primary physical custody. Amended Petition for Modification of Custody Order, 1/27/17; N.T., 2/13/17, at 19.

[2] This order is not reflected on the docket and is not included as part of the certified record. However, as referenced in the May 2016 order, the prior order provided similarly, except that Father's partial physical custody was on alternate weekends only. Interim Order For Custody, Pending Trial, 5/4/16, at 4.

[3] Several continuances were granted prior to the scheduling of the trial for February 13, 2017. Order, Application for Continuance, 11/30/16; Order, Application for Continuance, 9/21/16.

[4] A second trial date had been scheduled for March 9, 2017; however, the matter could not proceed as counsel for Father was engaged in a criminal trial. N.T., 3/9/17, at 2-3.

The trial court summarized the relevant testimony as follows:

The first witness at trial was Leisa Harmis who is a caseworker for Children, Youth, and Families. Ms. Harmis testified that she investigated Mother and Stepfather pursuant to a referral made on December 30, 2016. The investigation was closed and was considered "invalidated" shortly after the referral. Ms. Harmis testified that she authored Defendant's Exhibit 29[,] which was a letter indicating that the case was closed and considered invalidated. Father had expressed concerns to Ms. Harmis relating to an incident which took place at the day care and that [] Child had used foul language while in his presence. As stated previously, Ms. Harmis ultimately concluded that the case should be closed without a validated finding.

[The s]econd witness in the case was Father. Father testified that he has been involved with Child for two years and that involvement started when the child was approximately 16 months [old].

Father and Mother met when Father was 16 years old and Mother was 13 years old. Their sexual relationship started in 2012 and lasted approximately seven months. Father testified that he and Mother ended the relationship when Mother was approximately six weeks pregnant. Father claims that he lost track of her at that point and was unaware that [] Child was born. Father stated that he did not find out [] Child was born until such time as Mother filed for child support. The [c]ourt does not find Father's testimony on this matter to be credible. Child was over one year old at that time. Father filed for paternity testing and filed for custody after it was determined that he is the biological [f]ather of [] Child.

Father began visitation on a phase in basis. That was to last two months, and he was to ultimately see Child on an every-other-weekend basis under that agreement.

Father stated that he has a 17-year-old daughter named [K.H.] and a 14-year-old daughter named [S.H.]. Father testified that he had primary physical custody of [K.H.] and [S.H.] for the past five years. Father claimed that [K.H.] and [S.H.] have not seen their Mother for [] an extended period of time. In addition, Father lives with his girlfriend, [L.A.]. [L.A.] has two sons living

in the residence as well. They are [S.A.] (age 18) and [J.A.] (age 16).

Father testified that he originally wanted equally shared physical custody. Father indicates that he now wants primary physical custody. Father believes that Child is acting out with aggressive behavior such as choking. Father testified that Child choked the family dog, [L.A.], as well as another child at the day care. Father noted that overall, [] Child is well-behaved and is very smart. Father testified that Child has no behavioral issues when he is at Father's house. Father claims that he called Mother in July of 2016 to discuss the choking behaviors but Mother said that Father was simply making this all up.

[]Child was placed in therapy at some point in time. Father testified that Mother put Child in therapy without telling Father. Father claims that he was unaware of the referral for therapy until he saw the paperwork two months ago. Mother makes all of the physician appointments for Child. Father noted that Mother is better at notifying him now about the appointments. Father further noted that Child was not fully immunized initially. Father stated that Mother originally objected to immunizations on religious grounds. [ ] Father did say that Child is much closer now to being caught up on his vaccinations.

Father's work schedule is that he leaves at approximately 5:15 a.m. and he is home at approximately 3 p.m. [L.A.] remains at home until 7:30 or 7:40 a.m. She returns from work between 5:00 and 5:30 p.m. Child is currently spending a fair amount of time at West York Kindercare. Father complains that the facility charges too much but has no other complaints about the preschool.

Father stated that he and Mother have very little in way of positive communication. Communication is basically limited to texting and e-mail. Father complains that Mother does not respond to all of his communications or that she responds slowly. Father believes that Mother has been inflexible with regard to the custody schedule. Father cited as an example that he is not permitted to pick Child up at day care at the beginning of his weekend visitations even though Mother does not pick Child up from day care until well after Father is done with his workday. Instead, Father is required to wait until Mother picks up Child from day care and Child is brought to Mother's house.

Father testified that he has extended family in the York County area. Father specifically cited paternal grandparents and a brother that live locally. In addition, Father has cousins in the East York and Dover area. Child sees paternal grandparents quite frequently as well as Father's brother.

Father testified that he and Mother live approximately six miles apart from each other and that there is a 10 to 15 minute drive between the two residences.

Father owns a gun and has a concealed carry permit. Father testified that he carries the gun for self-defense purposes. Father noted that Mother was permitted to perform an inspection of his residence. During that inspection she could see that Father has a safe for his gun and that he has a safety lock for the gun.

Father denied the use of drugs. He further denied alcohol abuse. Father testified that he rarely drinks to the point of intoxication. He further stated that [L.A.] rarely drinks as well. Father noted that there was a Christmas party at paternal grandparents['] home in which alcohol was present. The alcoholic beverages that were featured in the photograph of the party did not belong to Father or [L.A.]. Father testified that he had one to two beers over a 4- to 5-hour period of time and that he was not intoxicated at the party.

Child is currently being seen for therapeutic purposes at Meadowlands. Father has been involved in attending some of the sessions but was not able to go to the last two sessions due to his work schedule. Father noted that he had two surgeries on his arm which resulted in him being off work from November of 2015 through the beginning of February of 2017. Father testified that he let Mother know of his work schedule but that Mother schedules appointments while Father is at work. [] Child is being seen due to having night terrors as well as acting out on occasions.

Father testified that he is always with Child when he has physical custody of Child unless he is picking up other children from various events. Father noted that Child and [L.A.] have a good relationship. Father further noted that he does not require his children or [L.A.'s] children to baby-sit. Father stated that he could use paternal grandparents as a custody backup in the event that he was to have equal or majority physical custody.

Father noted he took two vacations in the summer of 2016. Father testified that the first vacation took place in June. He stated that Mother insisted upon an itinerary for the vacation even though this is not specifically required by the Interim Order. Father claims that Mother made certain irrational accusations about being misled about where Father was during the vacation.

The second vacation took place later in the summer. Mother likewise insisted upon an itinerary for that vacation as well. Mother also claimed that Father failed to give the required notice for the vacation. Father testified that he brought Child back early so that Child could celebrate a birthday of his brother who is also a child of Mother.

Father related that he has some concerns about [ ] Child while he is in Mother's care. He first noted the choking behavior. He further noted that Child will fall asleep while in Mother's bed. Father further expressed a concern that Child is still breastfeeding while he is 3-and-a-half years old. Father notes that Mother has never provided breast milk to Father while Child is in Father's care. Father also claims that he is concerned about [C]hild's diet while in Mother's care. Father is concerned that Child is not eating any vegetables.

Father indicated that there is some dispute between him and Mother as far as the birth certificate. Father is not noted on the birth certificate. Father testified that Mother has refused to put him on the birth certificate.

When asked why Father should be awarded primary physical custody of Child, Father indicated that he has a better support group for [] Child. Father further indicated that he believes Mother alienates the child-father relationship by not allowing Father to have custody when [] Child is sitting at day care. Father further noted that Mother makes what he believes to be false accusations about allowing [] Child to get hurt while in his custody. Father noted an example of [] Child getting hurt on a Wednesday shortly before Christmas.

Father then discussed various text messages exchanged between him and Mother. These text messages are contained in Father's Exhibit B. Father testified that there was an incident where Child was sent to Father's house for custody without providing medications. Father claims that the police were called at least once and they required Mother to provide Father with

medication. Father further claims that text messages show that Mother is always negative in her responses to Father's text messages.

On cross examination, Father testified that he missed visitation opportunities with the child on a couple of occasions at least. Father further testified that while he did state something to the effect that he did not want his name on the birth certificate, Father indicated that he was angry at the time that he sent that text message and it was not representative of his true feelings.

Father further noted that on December 2[], 2015, he picked up Child at day care at 3 p.m. even though he was not allowed to pick up [] Child until 5:30 p.m. that day. Father testified that this was done by a mistake and was not an intentional violation of the custody order.

Father conceded on cross[-]examination that he told Dr. Kasey Shienvold that Mother was a "strong parent." He further conceded that he does not call Child on the phone while Child is in Mother's care.

The next witness at trial was [L.A.] who is Father's girlfriend. Father and [L.A.] have been involved in a relationship that has lasted three years. They have lived together for approximately 2-and-a-half years. The house in which they live is owned by Father's parents. [L.A.] testified that Father is very good with Child and that he acts like a "big kid" when Child is around. She further testified that Child has a good relationship with the other children living in the house, although she noted that the 18-year-old is not as close to Child as the other three children.

[L.A.] stated that Child did fall off of a booster-type seat while in her presence shortly before Christmas of 2015. She testified that [] Child complained of some pain in the area of his knee. [L.A.] examined the knee and saw no apparent injuries. [L.A.] did not see any bruising on [] Child and, therefore, did not notify Father of the incident. She further noted that she has no concern about Father's parenting abilities and [] Child does not exhibit any homesickness for Mother while in Father's custody.

The next witness present at trial was Mother. Mother testified that she has an associate's degree and works for the Commonwealth of Pennsylvania for the last two years as an income maintenance caseworker. Mother claims that she has

flexibility at her job due to having sick time and personal time. Mother testified that she has been to all of the doctors' appointments and that Father has only been to three doctors' appointments as well as three Meadowland appointments. Mother testified that she always notifies Father about doctor appointments.

Mother stated that Child is close with maternal grandmother and that maternal grandmother is able to act as a backup in emergency situations. Mother also testified that her niece is likewise available. Mother stated that maternal grandmother is present at custody exchanges due to Father bullying Mother during the exchanges.

Mother currently lives in a three bedroom home. There are four people residing in the home including Child. Child shares a bedroom with his brother, [G.D.], (12). Mother has lived in her current residence for three years. The residence is rented. Mother has been married for three years to [E.T.]. [E.T.] has a daughter by the name of [J.T.]. [E.T.] has partial physical custody of [J.T.] on an every-other-weekend basis. Mother testified that [E.T.] is a father figure to Child and that he has been so since the birth of [] Child.

Mother stated that she has a number of extended family members living in the area. These members include an aunt, an uncle, as well as cousins. In addition, there is maternal grandmother. Furthermore, Child has regular contact with [E.T.'s] relatives.

Mother stated that she has a great bond with [ ] Child. Child does experience some separation anxiety when leaving her. She testified that she expressed this anxiety issue to the pediatrician. The pediatrician then made a recommendation that Child should be seen by a caseworker to determine whether early intervention would be appropriate for [] Child. Mother testified later that early intervention was not required after that evaluation took place.

Mother noted that Child and [G.D.] have a great bond with each other. Mother stated that she engages in a number of activities with Child including reading, playing cards, playing at the park, and playing with Legos.

Mother testified that she advised Father that she was pregnant and Mother never hid that fact from Father. She further indicated that Father told her to either have an abortion or raise the child on her own. Mother claims that Father had no interest in having custody of Child until Mother filed for child support. The [c]ourt finds this testimony to be credible.

Mother testified that she stopped breastfeeding Child in either late 2016 or early 2017. She noted that breastfeeding was infrequent and was only at comfort times.

Mother claims that she has been flexible with Father concerning custody exchanges and times. She indicated that she has altered the schedule when requested. She further noted that Father was not flexible. She cited an example when Mother had tickets to an event in Hershey. Father insisted that she return early so that the exchange could take place at the required time.

Mother noted that there was no real communication between her and Father. She believes Father to be sarcastic and uncivil in his communications. Mother also believes that Father is unresponsive to Child's issues relating to allergies. Mother is also concerned that Child has suddenly started playing with gun-like behaviors. She is concerned about Father carrying a gun.

Mother noted that Child is currently up-to-date with his immunizations. Mother conceded that immunizations did not go forward as originally scheduled due to a religious objection she had to immunizations. Mother noted that her objection was based upon a personal belief as opposed to the belief of the UCC [United Church of Christ] congregation which she attends.

Mother indicated that she wishes the custody schedule to remain the same. She believes that this is necessary to maintain stability for Child. She would like to switch the weekends so that Child can have his weekends coincide with [J.T.].

On cross[-]examination there was some discussion concerning videos taken by Mother of conversations she had with Child. The [c]ourt reviewed Exhibits 42 and 43 in court on the first day of the custody trial. The videos became relevant after Mother testified that she did not direct Child during these videoed conversations. Exhibit 42, however, did not demonstrate that. At one point in the video, Child was talking to Mother about a truck he was observing outside of the window of the car. In response

to that conversation, Mother asked Child why he doesn't want to go to Father's house. This testimony concluded the first day of the custody trial. The trial resumed then on June 15, 2017.

The second day of trial commenced on June 15, 2017. Mother was still on the stand as of the commencement of the second day of testimony. The [c]ourt then reviewed two additional videos[,] which were imprudently taken by Mother[,] of Child. The two additional videos did not add anything to the original two videos.

Mother was then asked if she had any objections to having equally shared physical custody of Child with Father. She first noted that Child has repeatedly indicated to her that he does not want to go to Father's house. She later conceded that these protests have been decreasing. She further believes that Father consistently speaks ill of her to Child and that Father limits phone contact between her and Child.

Mother then discussed pictures of Child. Those pictures indicate various scratches and bruises on Child when the child is returned to Mother after being in Father's custody. The [c]ourt finds that the pictures do not demonstrate any significant issues that would be experienced by a normal child of the age in question. Mother noted there were no reports to Children, Youth, and Families based upon the injuries reflected in the pictures.

The next witness in the case was [J.T.]. [J.T.] is 15 years old and is the stepdaughter of Mother. [J.T.]'s custody arrangement with her own Mother provides that she is to see her biological [f]ather every other weekend. This means that Child has very limited contact with [J.T.] given the custody arrangements of the various parties. [J.T.] testified that her Mother is [D.G.] and her [f]ather is [E.T.].

The next witness was [E.T.]. [E.T.] is the husband of Mother. They have been together for three years and were married [in April 2014]. [E.T.] has been involved with Child since he was 6- to 7-months old. [E.T.] testified that he treats Child like he was his own son. He further testified that Mother is an "awesome" parent and that their son, [G.D.], gets along very well with Child.

The next witness in the case was [A.M.]. [A.M.] was a teacher at Kindercare for a period of time in which Child attended

Kindercare. [A.M.] noted that Child was clingy at first when dropped off by Mother and that Child would sometimes cry when Father picked Child up from Kindercare.

The final witness in the case was Father being called as on cross[-]examination. Father's testimony did not add anything from the provided on the first day of trial.

Trial Court Opinion ("T.C.O."), 6/28/17, at 1-19.

In its Order entered on June 28, 2017, the trial court awarded Mother primary physical custody of Child and Father partial physical custody the first, second, and fourth weekends of the month from Friday at 6:30 p.m. to Sunday at 6:30 p.m. In the summer, physical custody was to alternate on a weekly basis. In addition, Mother and Father were provided shared legal custody of Child.[5]

Also on June 28, 2017, the trial court entered an opinion analyzing each of the custody factors pursuant to 23 Pa.C.S.A. § 5328(a). On July 28, 2017, Father, through counsel, filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court thereafter entered a Rule 1925(a) opinion on August 15, 2017, in support of its order.

On appeal, Father raises the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by determining that the factor regarding which party is more likely to encourage contact with the other party was neutral, despite evidence that Mother was discouraging contact with

---

[5] The Order additionally set forth a vacation and holiday schedule, as well as other miscellaneous provisions related to transportation, communication, consultation, illness, disparaging comments, and the use of cigarettes, alcohol and illegal substances.

Father and attempting to alienate Father, as demonstrated, in part, through video evidence and testimony of Mother's frequent allegations of abuse by Father, and Mother's lack of cooperation in working with Father's schedule.

> 2. The trial court erred and/or abused its discretion in (1) determining Father chose to not be present in [ ] [C]hild's life until Mother sought child support, despite overwhelming evidence to the contrary and (2) in weighing this factor too heavily in Mother's favor.

> 3. The trial court erred and/or abused its discretion in determining the sibling relationship factor weighed in favor of Mother despite Father also having other children and step[-]children with whom [ ] [C]hild has developed a relationship.

> 4. The trial court erred and/or abused its discretion by determining the custody factor regarding the parties' attempts to turn [ ] [C]hild against the other was neutral.

> 5. The trial court erred and/or abused its discretion in determining that the factor of which party is more likely to tend to [ ] [C]hild's daily physical, emotional, developmental, and educational needs weighed in Mother's favor.

> 6. The trial court erred and/or abused its discretion in failing to optimize the time [ ] [C]hild spent with both parents, despite a lack of evidence to support Father only having limited periods of physical custody.

Father's Brief at 4-5. As father's issues are interrelated, we shall consider them together.

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A. § 5321-5340, we employ a well-settled standard of review:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.

- 12 -

However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**C.R.F. v. S.E.F.**, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted). **See also E.R. v. J.N.B.**, 129 A.3d 521, 527 (Pa.Super. 2015), *appeal denied*, 635 Pa. 754, 129 A.3d 521 (2016). This Court consistently has held:

the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

**Ketterer v. Seifert**, 902 A.2d 533, 540 (Pa.Super. 2006) (*quoting **Jackson v. Beck**, 858 A.2d 1250, 1254 (Pa.Super. 2004)). In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

**M.A.T. v. G.S.T.**, 989 A.2d 11, 18-19 (Pa.Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. **See** 23 Pa.C.S.A. §§ 5328, 5338. Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323(a).

Section 5338 of the Act provides that, following the filing of a petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338(a). Section 5328(a) also sets forth the best interest factors that the trial court must consider in doing so. *See E.D. v. M.P.*, 33 A.3d 73, 79-80 n.2 (Pa.Super. 2011). Specifically, Section 5328(a) of the Act provides as follows:

§ 5328. Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one

another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Father initially challenges the trial court's neutral finding pertaining to which party is more likely to encourage contact with the other party under Section 5328(a)(1). Father's Brief at 10-13. Father asserts the evidence suggested Mother discouraged contact with and attempted to alienate Child from Father. *Id.* at 10-11. Father references Mother's physically turning Child away from Father during a custody exchange, failure to allow Father additional time outside of the custody order, lack of cooperation with Father's schedule, and allegations of abuse against Father, as well as video evidence of a conversation between Mother and Child. *Id.* at 11-12. He concludes, ". . . the trail [sic] court failed to take into consideration the extensive testimony and evidence that suggested Mother was going beyond not actively encouraging the relationship by actually taking steps to discourage the contact." *Id.* at 12.

Father next claims the trial court erred in emphasizing his lack of involvement in the first sixteen months of Child's life as it relates to several of the custody factors. *Id.* at 13. He reasons that:

> [t]he trial court erred in determin[ing] that Father only sought to be active in the child's life following Mother['s] filing for child support, and in using this determination in various factors, including parental duties performed on behalf of [] [C]hild, the need for stability in [] [C]hild's education, family life, and community life, and the party more likely to maintain a loving, stable, consistent, and nurturing relationship. By failing to take into consideration the evidence that Father has demonstrated a desire to be active in [C]hild's life after learning he was the father, and then weighing the fact that Father was not involved in [ ] [C]hild's life for the first 16 months in consideration of multiple factors, the trial court abused its discretion.

*Id.* Father challenges the trial court's credibility determination of Mother's testimony as to Father's knowledge of Child's paternity. *Id.* at 14. Further, Father asserts the trial court erred in weighing to his lack of early involvement, noting that only those factors related to safety of a child should be afforded weighted consideration. *Id.* at 14-15. Moreover, Father indicates that the court incorrectly placed weighted consideration on Mother's role as Child's primary caretaker and ignored any role he attempted to assert. *Id.* at 15-16.

Father likewise avers that the trial court erred in determining that Section 5328(a)(6), Child's sibling relationships, weighs in favor of Mother. *Id.* at 17-18. Father indicates that he "has two children who live in his home and have not only developed relationships with [ ] [C]hild but with whom [ ]

[C]hild should have the opportunity to continue to build relationships."[6] *Id.* at 18.

In his fourth issue, Father argues the trial court erred in determining Section 5328(a)(8), pertaining to a parent's attempts to turn a child against the other parent, is neutral. In support of this assertion, Father references the previously mentioned video evidence of Mother's conversation with Child and allegations of Father's abuse of Child. *Id.* at 18-19.

Father further asserts that the trial court erred in determining Section 5328(a)(10), dealing with a parent's likelihood to tend to a child's daily physical, emotional, developmental, and educational needs, favors Mother, despite Mother's overprotective behavior as acknowledged by the court. *Id.* at 19-20. Father expresses concerns regarding Mother's extended breast-feeding and vaccination beliefs.[7] Father also stresses that testimony was presented at trial indicating Child choked classmates and a dog and experienced night terrors while in Mother's custody. *Id.* at 20. Father also states he is concerned about Child's appetite and palate. *Id*.

_____

[6] We note that Father's girlfriend, L.A., additionally has two children who are in the residence. N.T., 2/13/17, at 15, 142.

[7] Mother testified that she ceased breast-feeding at the end of 2016 or early 2017 and that Child breastfed only for comfort typically at night. N.T., 2/13/17, at 174-75. She further indicated that Child is now up-to-date with his vaccinations. *Id.* at 194.

Lastly, Father contends the trial court erred in failing to optimize the amount of time Child could spend with both parents, given the close proximity of their residences. *Id.* at 21. Father asserts the trial court did not articulate any concerns about his ability to provide a safe and stable home for Child and states, "[t]he trial court presented no support in its opinion for why it is not in the best interest of the child to have a shared physical custody schedule, except for inappropriately weighing some factors in Mother's favor."[8] *Id.*

In its opinion in support of its order, the trial court carefully analyzed and addressed each factor pursuant to Section 5328(a) and the Child's best interests as follows:

> (1) Party likely to encourage contact with other party. The [c]ourt finds that this factor is neutral. Based upon the testimony presented by each parent, it is clear to the [c]ourt that neither party does anything to actively encourage contact between [ ] Child and the other party.
>
> (2) Present and past abuse. The [c]ourt finds that this factor is neutral. The [c]ourt did not hear any credible testimony about present or past abuse from either party.
>
> (3) Parental duties performed on behalf of Child. The [c]ourt finds that this factor favors Mother. As stated previously, the [c]ourt

---

[8] Father baldly asserts that the trial court should have awarded a shared physical custody schedule. Father's Brief at 21. However, Father fails to support his request with any supporting statutory and/or case law. Thus, we consider the issue of whether the trial court should have awarded shared physical custody waived for purposes of our review. *See Chapman-Rolle v. Rolle*, 893 A.2d 770, 774 (Pa.Super. 2006) (stating that a failure to argue and cite to pertinent legal authority in support of a claim constitutes waiver of the claim). We do observe, however, that the court did increase Father's custodial time with Child in its June 28, 2017, Order.

- 19 -

has accepted Mother's testimony that Father chose not to be involved in Child's life for a significant portion of [ ] Child's early life. Father only sought to become actively involved after Mother sought Child support. The [c]ourt finds that Mother did perform all of the necessary duties on behalf of Child. The [c]ourt does accept Father's testimony that he likewise performs the necessary parental duties when Child is in his custody.

(4) Need for stability in Child's education, family life, and community life. The [c]ourt finds that this factor favors Mother. The [c]ourt does accept Mother's testimony as credible that she is the parent more likely to be involved in the Child's family and community life. In addition, Mother has been a more stable influence in Child's entire life given the fact that Father was not involved in the early portion of Child's life.

(5) Availability of extended family. The [c]ourt finds that this factor is neutral. The [c]ourt accepts the testimony of both parties as credible that there is extended family on both Mother's side and Father's side available to Child.

(6) Sibling relationships. The [c]ourt finds that this factor favors Mother. The [c]ourt accepts Mother's testimony that there is a significant bond between Child and [G.D.]. The [c]ourt does accept the testimony that Child has good relationships with step-siblings on both sides of the family.

(7) Well-reasoned preference of Child. Given the tender age of the Child, the [c]ourt did not interview Child. As a result, this factor is neutral.

(8) Attempts to turn Child against other parent. The [c]ourt finds that this factor is neutral. The [c]ourt believes that both parties engage in conduct designed to turn Child against the other parent.

(9) Party more likely to maintain loving, stable, consistent, and nurturing relationship. The [c]ourt finds that this factor favors Mother. As stated previously, Mother has been a constant factor in Child's entire life. The [c]ourt further finds Mother's testimony credible that she has a strong bond with Child and that she does nurture Child. While the [c]ourt believes that Mother is clearly overprotective, the [c]ourt does not find that she is overprotective to the point where that harms Child.

(10) Party more likely to tend to the daily physical, emotional, developmental, educational, and special needs of [ Child. The [c]ourt finds that this factor favors Mother. The [c]ourt does find Mother's testimony credible that she actively seeks to meet [ ] Child's emotional needs, as well as developmental needs. While the [c]ourt does find that Father is an adequate parent to Child, the [c]ourt does believe Mother's testimony as to her being the parent more likely to attend to Child's emotional and developmental needs.

(11) Proximity of residences. The [c]ourt does not find that this is a factor in the case given the fact that the parties live only 6 to 7 miles apart from each other.

(12) Availability of appropriate [c]hild-care arrangements. The [c]ourt finds that this factor is neutral. Both parties provided testimony that they have adequate [c]hild-care arrangements available for Child.

(13) Level of conflict and willingness to cooperate. The [c]ourt finds that this factor sightly [sic] favors Mother. It is clear that this case is a high conflict case. Based upon Mother's testimony[,] as well as review of exhibits which contained exchanges between the parties[,] the [c]ourt finds that Father is more likely to engage in sarcastic and unhelpful communication.

(14) Drug or alcohol abuse. The [c]ourt finds that this factor is neutral. The [c]ourt did not find any testimony credible that either party suffers from a drug or alcohol abuse problem.

(15) Mental or physical condition of party. The [c]ourt finds that this factor is neutral. The [c]ourt does not find that either party suffers from mental or physical conditions which prohibit them from exercising appropriate custody of Child.

(16) Other factors. The [c]ourt did not review any other factors in rendering this decision.

T.C.O., 6/28/17, at 19-23.

The court concluded as follows:

Mother has been primarily the caretaker of Child since birth. Father initially chose not to get involved with Child. The [c]ourt does accept Mother's testimony that she and Child have a more

- 21 -

significant bond than the bond that exits between Father and Child. Nevertheless, the [c]ourt does find that Child would benefit from additional time to be spent with Father.

*Id.* at 24.

In further support of its findings, in its Rule 1925(a) Opinion, the court reasoned:

> Appellant sets forth six arguments on appeal. Appellant's first argument is that the court erred in finding the first factor neutral. After reviewing the testimony, the court found it clear that neither party encourages contact. In regards to the video evidence, the court gave the videos due consideration and found that while in poor taste by Mother, they did not demonstrate that Mother was alienating [C]hild from Father.
>
> Appellant's second argument is that the court abused its discretion in determining that Father chose not to be present in [C]hild's life until Mother sought child support. This court determined that Father's testimony about losing track of Mother and not knowing she was pregnant was not credible. The court did find credible Mother's testimony that she did not hide the pregnancy from Father, and Father only became interested in having a relationship with [C]hild after Mother's filing for child support.
>
> Third, Appellant argues that the court erred in finding that the sibling relationships factor favors Mother. Father lives with two daughters, one is 14 years old, and the other is 17 [] years old. Father also lives with his girlfriend's sons, one who is 16 years old, and one who is 18 years old. This court found credible that although [ ] [C]hild has a good relationship with the children living in Father's home, [ ] [C]hild has a closer bond to Mother's son who is 12 years old, to which there was testimony that they enjoyed many activities together.
>
> In its fourth argument[,] Appellant argues that the court erred in determining that the parties' attempts to turn [ ] [C]hild against the other party was neutral. The court found that both parents engaged in such behavior.
>
> Appellant's fifth argument is that the court erred in finding that the factor regarding the party who is more likely to tend to [C]hild's daily physical, emotional, developmental, and

- 22 -

educational needs weighed in Mother's favor. This court found credible the evidence that Mother has been the primary caretaker of [C]hild for most of his life, and is the parent more likely to tend to [ ] [C]hild's needs. As a way of example, Father testified that Mother is the one who makes all of the child's medical appointments and that he believes Mother to be a strong parent.

Appellant's sixth argument is that this court erred in awarding the physical custody schedule. The court notes that it has increased Father's periods of physical custody with [ ] [C]hild. . . .

## CONCLUSION

Given the issues presented at trial, the [c]ourt properly reviewed the evidence presented and made an appropriate ruling based on the evidence.

T.C.O., 8/15/17, at 1-3.

This Court has stated that the trial court is required to consider all of the Section 5328(a) factors when entering a custody order. *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa.Super. 2011). Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S.A. § 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013). Importantly, as we stated in *M.J.M.*:

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. *See A.D. v. M.A.B.,* 989 A.2d 32, 35-36 (Pa.Super. 2010) ("In reviewing a custody order ... our role does not include making independent factual determinations.... In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

*Id.* (emphasis added). Further, we have also noted that, while the primary caretaker doctrine is no longer viable, a trial court may still consider a parent's role as primary caretaker in its consideration of the custody factors:

> We hasten to add that this conclusion does not mean that a trial court cannot consider a parent's role as the primary caretaker when engaging in the statutorily-guided inquiry. . . . A trial court will necessarily consider a parent's status as a primary caretaker implicitly as it considers the [S]ection 5328(a) factors, and to the extent the trial court finds it necessary to explicitly consider one parent's role as the primary caretaker, it is free to do so under subsection (a)(16).

*Id.*

Father's claims on appeal collectively challenge the trial court's findings of fact and determinations regarding credibility of witnesses and weight of the evidence presented at trial. Father essentially questions the trial court's conclusions and assessments and asks this Court to reweigh the evidence and reach an alternative conclusion. This we cannot do. Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527. As we stated in *King v. King*, 889 A.2d 630, 632 (Pa.Super. 2005):

> It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion in awarding custody to the prevailing party.

(*quoting* **Hanson v. Hanson**, 878 A.2d 127, 129 (Pa.Super. 2005)). After a thorough review of the record, we find no abuse of discretion. Further, to the extent Father challenges the weight attributed to any factor by the trial court, we likewise find no abuse of discretion. As stated above, the amount of weight that a trial court gives to any one factor is within its discretion. **See M.J.M.**, 63 A.3d at 339.

In the case *sub judice*, the trial court exhaustively and reasonably analyzed and addressed each factor under Section 5328(a). **See** T.C.O. at 19-23. The trial court's findings and determinations regarding the custody factors set forth in Section 5328(a) are supported by competent evidence in the record, and we will not disturb them. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/22/2018